**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**ROBERT JOEL BIELAWSKI, JR.,**
                              **Plaintiff,**

**v.**

                                                              **19-CV-32-HKS**

**ANDREW SAUL, Acting**
**Commissioner of Social Security,**

                              **Defendant.**

_____


**DECISION AND ORDER**

       Plaintiff, Robert Joel Bielawski, Jr., brings this action pursuant to the

Social Security Act ("the Act") seeking review of the final decision of Acting

Commissioner of Social Security (the "Commissioner"), which denied his application for

a period of disability and disability insurance benefits ("DIB") under Title II the Act.  Dkt.

No. 1.  This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the

parties have consented to the disposition of this case by the undersigned pursuant to 28

U.S.C. § 636(c).  Dkt. No. 15.


       Both parties have moved for judgment on the pleadings pursuant to

Federal Rule of Civil Procedure 12(c).  Dkt. Nos. 11, 13.  For the reasons that follow,

Defendant's Motion for Judgment on the Pleadings (Dkt. No. 13) is GRANTED and

Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is DENIED.

## BACKGROUND

On October 3, 2014, Plaintiff protectively filed an application for SSI with the Social Security Administration ("SSA") alleging disability beginning on October 1, 2013, due to:  Fibromyalgia; Disc Disease; Back Nerve Issues; and High Anxiety.  Tr.[1] 176-77, 198.  On May 15, 2015, Plaintiff's claim was denied by the SSA at the initial level and he requested review.  Tr. 110-13, 116-17.  On July 6, 2017, Plaintiff appeared with his attorney and testified, along with a vocational expert ("VE") before Administrative Law Judge, Sharon Seeley ("the ALJ").  Tr. 36-96.  On January 2, 2018, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act.  Tr. 13-32.  Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on November 27, 2018. Tr. 1-4.  Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a

---

[1] References to "Tr." are to the administrative record in this matter.  Dkt. No. 4.

mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above.  As an initial matter, the ALJ found Plaintiff's earnings record

affirmed that he acquired sufficient quarters of coverage to remain insured through December 31, 2018.  Tr. 17.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 1, 2013, the alleged onset date.  Tr. 19.   At step two, the ALJ found Plaintiff has the following severe impairments:  Post-Traumatic Stress Disorder ("PTSD"); Generalized Anxiety Disorder; Depressive Disorder; Degenerative Disc Disease of the Lumbar Spine without Radiculopathy; Diabetes Mellitus; Sensory Neuropathy of the Lower Extremities; Obesity; and History of June 2015 Myocardial Infarction and Coronary Bypass Grafting.  *Id.*  Also, at step two, the ALJ found Plaintiff's Hypothyroid Disorder; Hypertension; and Cannabis Use Disorder are non-severe impairments.  Tr. 20.  At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment.  Tr. 21-23.

Next, the ALJ determined Plaintiff retained the RFC to perform a limited range of light work.[2]  Tr. 23-29.  Specifically, Plaintiff can stand or walk for thirty minutes before alternating to sitting for five minutes and can sit for one hour before alternating to standing five minutes, while remaining on task.  Tr. 23.  Plaintiff can occasionally balance, stoop, kneel, crouch, crawl or climb ramps or stairs, but can never operate foot controls or climb ladders, ropes or scaffolds.  *Id.*  Plaintiff can work in an environment

---

[2]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. 416.1567(b).

with no more than occasional exposure to hazards such as unprotected heights or moving machinery.  *Id.*  Plaintiff can understand, remember and carry out simple, routine instructions and tasks, maintain attention and concentration sufficient for such tasks with customary work breaks, and make simple, routine work-related decisions commensurate with such tasks.  *Id.*  Lastly, Plaintiff can have levels of contact with supervisors that are customary in the context of such simple, routine work, and can have occasional interaction with coworkers and occasional, incidental interaction with the general public.  *Id.*

   At step four, the ALJ found Plaintiff is unable to perform his past relevant work as:  a "Job Coach," skilled work with a specific vocational preparation ("SVP") of 6 that generally requires light exertion, but was performed by Plaintiff at medium exertion; "Residential Aide" (medium exertion); and "Psychiatric Aide" (medium exertion).  Tr. 30. At step five the ALJ concluded—based on the VE's testimony in consideration of Plaintiff's age (50 and closely approaching advanced age), education, work experience, and RFC—that Plaintiff was capable of performing other work existing in significant numbers in the national economy.  *Id.*  Specifically, the ALJ found Plaintiff could perform the following jobs:  "Housekeeper," unskilled SVP 2 work requiring light exertion; and "Merchandise Marker," light unskilled SVP 2 work.  Tr. 31.  Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act from October 1, 2013, through January 2, 2018.  *Id.*

## II.    Analysis

Plaintiff argues the ALJ erred in evaluating the medical opinion evidence, and ultimately relied on her own lay opinion as well as gaps in Plaintiff's medical record in determining Plaintiff's RFC.  Dkt. No. 11 at 2.  The Commissioner contends the decision is supported by substantial evidence and should be affirmed.  Dkt. No. 13 at 2. This Court agrees with for Commissioner for the reasons that follow.

### A.  The Physical RFC is supported by substantial evidence.

Plaintiff argues that the ALJ erred in determining his Physical RFC by relying on medical opinions from Michael Rosenberg, M.D. ("Dr. Rosenberg") and Roderic Hunt, PA-C ("PA Hunt"), and her own lay interpretation of medical evidence in support of the Physical RFC finding that Plaintiff is physically capable of performing a limited range of light work.  Dkt. No. 11 at 14-21.  The Commissioner contends the ALJ properly evaluated medical opinion evidence regarding Plaintiff's physical condition in assessing Plaintiff's Physical RFC, which is supported by substantial evidence.  Dkt. No. 13 at 5-11.  This Court agrees with the Commissioner that the Physical RFC is supported by substantial evidence, for the reasons that follow.

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuous basis."  *Melville v. Apfel*, 198 F.3d 45,52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996).  In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a

whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  However, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  He is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole. *Supra* at 587.

### 1.  Dr. Rosenberg

In March 2015, Dr. Rosenberg performed a consultative examination of Plaintiff.  Tr. 357-360.  Upon examination, Plaintiff reported a history of back pain, which he described as constant at a level of six to eight (on a 1-10 scale), radiating to his legs and calves.  Tr. 357.  Dr. Rosenberg observed Plaintiff's normal gait, but inability to walk on heels or toes and 60% squat capability.  Tr. 358.  Dr. Rosenberg also noted Plaintiff retained full range of motion of his cervical and lumbar spine (but experienced pain in doing so), shoulders, elbows, forearms, wrists and ankles bilaterally, and demonstrated reduced range of motion of the hips and knees bilaterally.  Tr. 359.  Dr. Rosenberg diagnosed:   Mild Low Back Pain, Hypertension, and Diabetes Mellitus.  Tr. 359.  He opined Plaintiff has mild restrictions for heavy lifting and carrying secondary to his mild back pain; activities; and prolonged squatting and kneeling.  Tr. 360.  The doctor also restricted Plaintiff from activities that require a great deal of exertion because of his obesity.  *Id.*

The ALJ accorded the opinion "substantial weight" in support of Plaintiff's physical functional capacity.  Tr. 27.  The ALJ referenced the doctor's examination notes, including Plaintiff's reported activities of daily living such as his ability to clean, do laundry, shop, shower, bathe, dress himself, socialize with friends, and occasional fishing and hunting excursions.  *Id.*  The ALJ also referenced Dr. Rosenberg's observation that Plaintiff retained 5/5 strength in his upper and lower extremities.  *Id.* The ALJ explained that she accorded "some limited weight" to the doctor's opinion that Plaintiff has mild limitations for heavy lifting and carrying, prolonged kneeling and squatting, and for activities that involve a great deal of exertion, because the opinion is based on a personal examination of Plaintiff.  *Id.*  Here, the ALJ acknowledged that Dr. Rosenberg examined Plaintiff prior to his myocardial infarction and coronary bypass.  *Id.* The ALJ also acknowledged that the doctor did not have the benefit of other evidence available at the hearing level, including Plaintiff's EMG/Nerve conduction study demonstrating evidence of sensory neuropathy.  *Id.* (referencing Exhibit 8F).  In conclusion, the ALJ explained that she relied on Dr. Rosenberg's opinion and examination results to limit Plaintiff to "light strength:  occasionally balancing, stooping, kneeling, crouching, crawling or climbing ramps or stairs; never operating foot controls or climbing ladders, ropes or scaffolds; and to work in an environment with no more than occasional exposure to hazards such as unprotected heights or moving machinery."  *Id.*

### 2. PA HUNT

In June 2015, PA Hunt completed a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" of Plaintiff.  Tr. 372-73.  Regarding Plaintiff's physical functioning, PA Hunt identified "HTN" as Plaintiff's permanent physical health condition and opined Plaintiff had no evidence of limitations with walking, standing, sitting, pushing, pulling, bending, seeing, hearing, speaking, using hands, and climbing (including stairs).  Tr. 372-73.  He also opined Plaintiff would be "moderately limited" in his ability to lift and carry.  Tr. 373.

The ALJ noted that Plaintiff received primary care from PA Hunt during the relevant period and accorded PA Hunt's opinion that Plaintiff has moderate limitations with lifting and carrying "substantial weight," where she found the opinion more consistent with subsequent medical records than Dr. Rosenberg's opinion.  Tr. 27. However, the ALJ further explained that she incorporated additional exertional, postural and environmental limitations in accordance with the limitations on squatting and kneeling, assessed by Dr. Rosenberg, and in consideration of Plaintiff's subsequent 2017 EMG study that showed evidence of sensory neuropathy.  Tr. 27-28.  Lastly, the ALJ explained that she also relied on evidence of Plaintiff's lumbar impairment, although she found the evidence contradictory, to limit Plaintiff to standing or walking for thirty minutes before alternating to sitting for five minutes and sitting for one hour before alternating to standing for five minutes (while remaining on task).  Tr. 28.

### 3. Additional statements regarding Plaintiff's physical condition

The ALJ also addressed a medical statement from June 2015, upon Plaintiff's discharge after his coronary artery bypass procedure, directing that he should lift no greater than ten pounds for six weeks and should not return to work until examined by his surgeons.  Tr. 28.  Here, the ALJ explained that she did not give the statement substantial weight because it was explicitly limited in time to the post-operative period and did not suggest any limitations lasting at least twelve consecutive months.  *Id.*  Similarly, the ALJ explained that she elected not to accord substantial weight to an April 2016 statement that Plaintiff had the exertional capacity for heavy housework such as scrubbing floors and moving furniture.  *Id.*  The ALJ noted the statement was authored as part of a pre-operative clearance in preparation for cyst removal.  The ALJ also noted that the basis for the statement was not explained and it was inconsistent with other evidence in the record supporting Plaintiff's ability to perform light work.  *Id.*

### 4. Objective Medical Evidence and Treatment History

The ALJ found that the objective medical evidence does not strongly support Plaintiff's allegations regarding the symptoms and limitations resulting from his physical impairments.  Tr. 25.  Here, the ALJ noted that a 2014 MRI showed lumbar foraminal stenosis due to disc bulges, however, medical records throughout the relevant period did not substantiate Plaintiff's reports of disabling back pain.  *Id.*  For example, on examination for a neurologic consultation in February 2017,  Peterkin Lee Kwen,

M.D. ("Dr. Kwen"), noted that Plaintiff reported chronic low back pain for the past fifteen years with disc disease in the lumbar spine, but denied any radicular pain from the lumbar spine at that time.  Tr. 617.  Accordingly, Dr. Kwen assessed stable low back pain.  Tr. 618.  The ALJ also addressed Plaintiff's electromyographic and nerve conduction studies performed by Dr. Kwen in June 2017.  Tr. 643-645.  Dr. Kwen noted Plaintiff reported some sharp pain in the lower leg radiating to the ankle region, but denied any issues with balance or walking.  Tr. 643.  Upon completion of the testing, Dr. Kwen observed moderate sensory neuropathy of the lower extremities, but no evidence of tibial or peroneal neuropathy and no evidence of lumbar radiculopathy.  Tr. 643.

The ALJ also observed that Plaintiff's treatment history revealed that Plaintiff self-ceased use of his prescribed medications and failed to follow through on recommended treatment on multiple occasions during the relevant period.  Tr. 25. (referencing Exhibits 4F, 9F, 17F, 22F, 25F).

### 5. Plaintiff's Testimony

In addition to medical evidence, the ALJ considered Plaintiff's testimony that he can sit for thirty minutes at one time, stand for twenty minutes at one time, lift up to twenty pounds, is unable to kneel or squat, and reported hand numbness.  Tr. 24 (referencing Tr. 76-78).  Plaintiff also testified he can walk for fifteen to twenty minutes before requiring a break but can climb stairs.  Tr. 79.  She also considered Plaintiff's reports during the period at issue, of numbness in his lower legs, pain in his lower back, shortness of breath, reduced range of motion, and pain with repetitive motions.  *Id.*

Lastly, the ALJ discussed Plaintiff's testimony that he mows his own lawn with a push mower for thirty minutes at a time before his back, legs and feet hurt, prepares his own meals, and shops for food a couple of times per month.  Tr. 27.

Based on the above, the ALJ concluded that Plaintiff had the RFC "to stand or walk for thirty minutes before alternating to sitting for five minutes and can sit for one hour before alternating to standing five minutes (while remaining on task)."  Tr. 23.  The ALJ also concluded Plaintiff can "occasionally balance, stoop, kneel, crouch, crawl or climb ramps or stairs but never operate foot controls or climb ladders ropes or scaffolds." *Id.*

Plaintiff argues that the ALJ impermissibly relied on her own lay opinion in finding that Plaintiff retained the RFC to perform a limited range of light work because the opinions from Dr. Rosenberg and PA Hunt do not adequately reflect Plaintiff's conditions and the related limitations he suffers.  Dkt. No. 11 at 17.  Specifically, Plaintiff contends that neither Dr. Rosenberg nor PA Hunt's opinion considered Plaintiff's subsequent myocardial infarction, degenerative disc disease, neuropathy, deep vein thrombosis, and diabetes with hyperglycemia.  Dkt. No. 11 at 16.

While Plaintiff is generally correct that an ALJ should not rely on medical opinions that pre-date a significant development in a claimant's medical history, the mere fact that an opinion pre-dates other evidence in the record does not automatically render the opinion void, where "the subsequent evidence does not undermine [the

opinion evidence]." *Schreiner v. Commissioner of Social Security*, 2020 WL 5250535, *6 (W.D.N.Y. 2020) (quoting *Hernandez v. Colvin*, 2017 WL 2224197, *9 (W.D.N.Y. 2017). Here, Plaintiff has failed to demonstrate that the record evidence relating to his myocardial infarction, degenerative disc disease, neuropathy, deep vein thrombosis, and diabetes with hyperglycemia, undermines Dr. Rosenberg's and PA Hunt's medical opinions. Furthermore, the ALJ explicitly acknowledged that Dr. Rosenberg examined Plaintiff prior to his myocardial infarction and coronary bypass surgery, and assessed additional limitations in consideration of Plaintiff's neuropathy, which was supported by objective medical evidence. Tr. 27-28. The ALJ also addressed medical statements authored upon Plaintiff's discharge from coronary bypass surgery and pre-operative clearance for excision of a cyst on his back, and appropriately found that the records did not suggest any limitations lasting twelve consecutive months. Tr. 28.

Ultimately, the ALJ considered the medical opinions along with other evidence including medical records, objective testing and Plaintiff's own testimony, in assessing the Physical RFC. This approach is consistent with Social Security regulations that state, "[w]e will assess your residual functional capacity based on all the relevant evidence in your case record." 20 C.F.R. § 404.1545. Relevant evidence includes medical opinions and "objective medical evidence," which includes "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1). It is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical

history, the ALJ is under no obligation to seek additional information in advance of

rejecting a benefits claim." *Rosa*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999).  Accordingly, this

Court finds the ALJ properly weighed all the evidence available and formed Plaintiff's

Physical RFC in accordance with the record as a whole.


**B.  The Mental RFC is supported by substantial evidence.**

Next, Plaintiff contends the ALJ erred in evaluating medical opinions from

Rebecca Billings, PH.D. ("Dr. Billings"), Ned Lindstrom, LMHC ("LMHC Lindstrom"), and

PA Hunt, in determining his Mental RFC.  Dkt. No. 11 at 23.  The Commissioner argues

the ALJ properly weighed the opinions regarding Plaintiff's mental impairments and

limitations and that the Mental RFC is supported by substantial evidence.  Dkt. No. 13 at

11.  Again, this Court agrees with the Commissioner for the reasons that follow.


**1.  Dr. Billings**

Dr. Billings performed a consultative psychiatric examination of Plaintiff in

March 2015.  Tr. 361-68.  She diagnosed Persistent Depressive Disorder; Posttraumatic

Stress Disorder; Unspecified Personality Disorder with Borderline Obsessive-

Compulsive Features; Cannabis Use Disorder; Rule Out Somatic Symptom Disorder

with Predominant Pain.  Tr. 367.  The doctor found no evidence of limitations with

Plaintiff's ability to follow and understand simple directions and instructions, perform

simple tasks independently, maintain a regular schedule, learn new tasks, or perform

complex tasks independently.  Tr. 367-68.  However, she further opined Plaintiff

appears to have moderate range limitations in maintaining attention and concentration,

making appropriate decisions specifically concerning mental health care, relating adequately with others, and appropriately dealing with stress.  Tr. 368.  Here, the doctor noted these difficulties are likely caused by mental health symptoms not in adequate treatment at the time.  *Id.*  Lastly, Dr. Billings opined the Plaintiff's psychiatric problems were not significant enough to interfere with Plaintiff's ability to function on a daily basis. *Id.*

The ALJ explained that she accorded Dr. Billing's opinion "partial weight." Tr. 28.  Specifically, she explained she did not give "substantial weight" to the doctor's assessment that Plaintiff's impairments would not interfere with his ability to function on a daily basis, where she found the doctor's assessment was inconsistent with her assessment of moderate limitations in maintaining attention and concentration, relating adequately with others, and appropriately dealing with stress.  Tr. 28.  Here, the ALJ also noted that the record otherwise supports functional limitations based on Plaintiff's mental impairments.  *Id.*  Accordingly, the ALJ assessed limitations to simple, routine work and decisions, limited contact with coworkers and no public contact.  Tr. 28-29.

Plaintiff contends the ALJ failed to explain and account for the limitations Dr. Billings assessed regarding Plaintiff's ability to deal with stress.  Dkt. No. 11 at 23. However, contrary to Plaintiff's assertion, the ALJ explained in her decision that the limitations she assessed (simple, routine work and decisions, limited contact with coworkers and no public contact) also address Plaintiff's difficulty in dealing with stress

as identified by Dr. Billings.  Tr. 29.  Accordingly, this Court finds the ALJ did not err in

evaluating Dr. Billing's opinion in support of the Mental RFC determination.


### 2.  PA Hunt

As previously discussed in this decision, PA Hunt completed a "Medical

Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug

Addiction Determination" Form on Plaintiff's behalf in June 2015.  Tr. 372-373.  PA Hunt

identified PTSD and Anxiety as Plaintiff's mental health conditions.  Tr. 372.  He opined

Plaintiff would be very limited in his ability to interact appropriately with others, in

functioning in a work setting at a consistent pace, and in maintaining socially

appropriate behavior without exhibiting behavioral extremes.  Tr. 373.  He also opined

Plaintiff would be moderately limited in his ability to maintain basic standards of

personal hygiene and grooming; but would have no limitations with understanding and

remembering instructions, carrying out instructions, maintaining attention and

concentration, and making simple decisions.  *Id.*  Lastly, PA Hunt opined Plaintiff's

PTSD would last at least twelve months.  *Id.*


The ALJ explained that she did not give substantial weight to PA Hunt's

opinion regarding Plaintiff's mental functional capacity because he is not a psychologist

or mental health specialist, and as a Physician's Assistant, he is not an acceptable

medical source.  Tr. 29.  The ALJ also found PA Hunt's opinion inconsistent with

treatment notes including mental status evaluations and Global Assessment of

Functioning ("GAF") scores assigned by mental health counselors Peter Tarbrake,

LCSW ("LCSW Tarbrake") and Suzette Carnahan, LCSW-R ("LCSW Carnahan").  Here, the ALJ observed that LCSW Tarbrake and LCSW Carnahan both assessed Plaintiff with GAF scores of 55/60 and 60, which the ALJ noted is defined by the Diagnostic and Statistical Manual of Mental Disorders ("DSM") as indicative of only moderate symptoms or moderate difficulty in social, occupational or school functioning.  Tr. 29.  The ALJ clarified that she was not according substantial weight to the GAF scores themselves, but rather the consistency between the scores both mental health counselors assessed for Plaintiff and the inconsistency of PA Hunt's opinion with those findings.  Tr. 29.

Plaintiff argues that the ALJ improperly "cherry picked" the PA Hunt's opinion by according substantial weight to the physical limitations the PA assessed but declining to accord the same to the mental limitations he assessed.  Dkt. No. 14 at 6. "An ALJ may not "cherry pick" from a medical opinion, i.e., he or she may not credit evidence that supports administrative findings while ignoring conflicting evidence from the same source."  *Collins v. Colvin*, 2016 WL 5529424, *3 (W.D.N.Y. 2016) (quoting *Younes v. Colvin*, 2015 WL 1524417, *8 (N.D.N.Y. 2015) ("'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both.").  However, the ALJ did not ignore any part of PA Hunt's opinion, instead she explained that she accorded substantial weight to the physical limitations where she found the opinion supported by other medical evidence in the record and did not accord substantial weight to the mental limitations where she found them inconsistent with other medical evidence in the record and observed that he is not a psychologist or mental health specialist.  *See Pellam v. Astrue*, 508 F. App'x

87,89 (2d Cir. 2013) (ALJ properly declined to credit certain conclusions in the medical opinion that were inconsistent with other evidence of record). Accordingly, this Court finds the ALJ did not err in evaluating PA Hunt's opinion regarding Plaintiff's mental impairments.

### 3. LMHC Lindstrom

LMHC Lindstrom completed a Mental Impairment Questionnaire on Plaintiff's behalf in April 2017. Tr. 637-642. He explained that he treated Plaintiff for a total of twenty-two sessions from September 2015 through September 2016 (most recent appointment was September 1, 2016) for Generalized Anxiety Disorder, with a treatment focus on managing anxiety and negative thoughts/feelings. Tr. 638. LMHC Lindstrom referenced Plaintiff's continued focus on a perceived enemy whom he feels persecuted by, noting that while Plaintiff can redirect his thoughts, he easily returns to feeling persecuted. Tr. 638. LMHC Lindstrom opined that long-term treatment is necessary for Plaintiff to function in the community. *Id.* Regarding Plaintiff's ability to function given his mental impairments, LMHC Lindstrom opined Plaintiff would be extremely limited in maintaining social functioning, concentration, persistence or pace; markedly limited with restriction of activities of daily living; and would experience one or two episodes of decompensation within a twelve-month period each of at least two weeks duration. Tr. 640. He also opined Plaintiff would miss more than four workdays per month due to his impairments or treatment and estimated he would be unable to stay on task for more than an hour, no more than four hours maximum. Tr. 641.

The ALJ explained that she did not give substantial weight to LMHC Lindstrom's opinion where it was unsupported by any counseling notes or other contemporaneous treatment records, despite Lindstrom's report that he was Plaintiff's counselor for a year.  Tr. 29.  Here, Plaintiff contends that the ALJ should have made an attempt to "fill the gap" in the record prior to discounting the opinion.  Dkt. No. 11 at 28.  Plaintiff disregards the fact that his counsel affirmed the administrative record was complete during the administrative hearing.  Tr. 95.

The ALJ also noted that as a counselor, LMHC Lindstrom is not considered an acceptable medical source and observed that the GAF score of 38, assessed by LMHC Lindstrom was entirely inconsistent with the scores assessed by LCSW Tarbrake and LCSW Carnahan (55/60), and with other treatment notes in the record.  *Id.*  Here, the ALJ noted that the symptoms alleged by LMHC Lindstrom were not reflected in the treatment notes from Heart-2-Heart, where Plaintiff attended counseling with LCSW Carnahan since 2016.  *Id.*  It is appropriate to afford less weight to an opinion that is not thoroughly explained or supported by objective medical evidence.  *See* 20 C.F.R. § 404.1527 (c)(3) (explaining that the degree of weight given to a medical opinion is affected by the amount of medical evidence and the quality of the explanation supporting the opinion).  Lastly, the ALJ observed that the limitations assessed by LMHC Lindstrom were inconsistent with Plaintiff's own reports of his daily activities.  *Id.*

20

As explained above, when presented with conflicting evidence, the ALJ, as the trier of fact, has the duty to resolve that conflict. *Richardson*, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971).  Although we consider opinions from medical sources on issues such … [as a claimant's] residual functional capacity … the final responsibility for deciding [this] issue[] is reserved to the Commissioner."  20 C.F.R. § 1527(d)(2).  There is no requirement that the ALJ pick one opinion and use that particular evaluation in its entirety.  Here, the ALJ's evaluation of Plaintiff's medical records, including the medical opinions discussed herein constitute substantial evidence in support of the mental RFC determination.  *See, Matta*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (concluding that an ALJ did not impermissibly rely on his own medical judgment because "he was entitled to weigh all of the evidence available to make [an RFC] finding that was consistent with the record as a whole").

## CONCLUSION

For these reasons, Defendant's Motion for Judgment on the Pleadings (Dkt. No. 13) is GRANTED.  Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is DENIED.  The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:     Buffalo, New York
           September 21, 2020


                                    *S/ H. Kenneth Schroeder, Jr.*
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**

21